IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 3:12-974 |
| | ) | |
| | ) | |
| -vs- | ) | MOTION FOR |
| | ) | MODIFICATION |
| | ) | OF ORDER |
| JONATHAN PINSON | ) | |

COMES NOW, the Defendant, Jonathan Pinson, who gratefully and respectfully asks this Court to modify the Order it entered at docket entry 293, granting the Defendant's request that the Court recommend to the Bureau of Prisons (BOP) that he receive 12 months home confinement/placement in RCC instead of serving his entire sentence at the Camp at FCI Edgefield.  Because of the COVID-19 pandemic and the risk it poses both to himself and other inmates currently serving sentences in the BOP, the Defendant humbly requests that the Court modify its order to recommend that he be put on home confinement/placed in an RCC immediately (which is only four months earlier than the recommendation this Court made to the BOP initially) in order for him to be able to more effectively socially distance himself from others.

## PROCEDURAL HISTORY

A jury convicted the Defendant on July 3, 2014, of multiple counts, alleging violations of federal wire fraud, mail fraud, RICO, money laundering, and false information statutes.  Initially, the Court sentenced the Defendant to 60 months imprisonment, a term of supervised release, and the payment of special assessment fees,

restitution, and/or forfeiture.

The Defendant appealed, and the Fourth Circuit Court of Appeals vacated some of his convictions and remanded the case for resentencing. On January 25, 2018, the Court resentenced the Defendant to 48 months imprisonment with accompanying supervised release and payment conditions.

On October 25, 2019, the Defendant filed a pro se motion with the Court, asking the Court to recommend to the BOP that he serve the final 12 months of his sentence on home confinement or in an alternative to a BOP prison facility. On December 11, 2019, the Court granted the Motion and made the recommendation to the BOP.

The online BOP inmate locator lists the Defendant's release date from the BOP as August 27, 2021. https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results. Therefore, should the BOP accept the Court's recommendation, the BOP would release the Defendant to home confinement or some other alternative on August 27, 2020.

## ARGUMENT

In support of this Motion, the Defendant would show:

-   He was sentenced as an offender with a criminal history category I, never having had any interaction with law enforcement prior to his arrest in this case;

-   He entered the BOP on April 2, 2018, and the 24 months he already has served on convictions for these offenses is substantial as compared to the mean and median sentences for all defendants of all criminal history categories who have

been sentenced for the same or similar offenses in recent history;[1]

- He has a stable, supportive network of friends and family who will stand by him upon his release;

- On March 26, 2020, Attorney General Barr published a memorandum both encouraging the BOP to release more inmates on home confinement and setting forth criteria the BOP should use in determining whether inmates should be released on home confinement in light of the pandemic.[2]  Since the issuance of the memorandum, the BOP has released 789 inmates to home confinement. https://www.bop.gov/coronavirus/;

- When applying this criteria to the Defendant, he meets them:

   o The Age and the Vulnerability of the Inmate to Covid-19, according to CDC Guidelines-  According to Center for Disease Control (CDC) statistics, https://www.cdc.gov/nchs/nvss/vsrr/COVID19/:

      ▪ People in his age group, 45-54 years of age, are twice as likely to die from Covid-19 as those who are just 10 years younger; and

      ▪ Men are 30% more likely to die from Covid-19 than women.

      ▪ Furthermore,   the   African   American   population   is   being

---

[1] E.g., U.S. Sentencing Commission's 2015 Source Book of Federal Sentencing Statistics, at Table 13. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/Table13.pdf

[2] The Memorandum can be found at https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf .

disproportionately, negatively affected by this disease as opposed to other segments of the American people. https://www.aljazeera.com/news/2020/04/coronavirus-disproportionately-killing-african-americans-200409231336885.html.

- o The security level of the facility currently holding the inmate, with priority given to inmates residing in low and medium security facilities: The Defendant is currently housed in the Camp portion of FCI Edgefield, a minimum security facility.

  https://www.bop.gov/locations/institutions/edg/.

- o The inmate's conduct in prison . . . .- According to the Defendant,[3] the Defendant has had no disciplinary infractions.

- o The inmate's PATTERN score (a tool the BOP uses to assess the inmate's danger to the community and/or risk of recidivism). . . .- According to the Defendant, he has received among the lowest scores possible after being assessed with this tool.

---

[3] The undersigned has communicated with the Defendant's caseworker in the BOP for the purpose of obtaining documentation that corroborates these assertions. However, the caseworker was unable to share this information with the undersigned due to BOP policies that prohibit such disclosure in the absence of an agreement executed between the inmate and the BOP. The Defendant is in the process of working with the caseworker to execute whatever documents are necessary to allow the caseworker to share information with the undersigned. Due to the time-sensitivity of this request, the undersigned has filed this Motion prior to obtaining corroborating information from the BOP. However, should clarification be required after the undersigned receives it, the undersigned will amend this motion immediately to reflect such clarification.

o <u>Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which he would be confined upon release would present a lower risk of contracting Covid-19 than the inmate would face in his or her BOP facility</u>- Although it is difficult to obtain recent data, the data that is available suggests that the BOP houses two inmates per every 120-200 square feet. https://www.bop.gov/policy/progstat/1060_011.pdf. The residence in which the Defendant would live on home incarceration is approximately 3,200 square feet. Currently, three people live in this residence, his wife and two of his three children. If the Defendant were to live here, the home would provide space for one person every 800 square feet, a degree of separation much greater than likely is currently possible in the BOP. Because "[s]ocial distancing is (the) key to keeping yourself and other safe," https://news.emory.edu/stories/2020/03/er_social_distancing/campus.html, the fact that his home confinement would provide him with much more opportunity to socially distance himself from others would increase the likelihood that he would not contract Covid-19 nor spread it to others.

o <u>The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community . . . .</u> The offenses for which the Defendant was ultimately convicted contain no elements of violence, did not involve

5

the use of firearms or any other weapons, and contained no mandatory minimum sentences.

## **CONCLUSION**

The Defendant is grateful to this Court for granting his previous request, and humbly requests that this Court modify its recommendation ever so slightly to encourage the BOP to release him to home confinement/RCC four months sooner to allow him to more effectively distance himself from others, thereby limiting the risk to himself and to others of contracting COVID-19.

The undersigned has consulted with the Government, and the Government opposes this Motion.

Respectfully submitted,

s/ Andrew B. Moorman, Sr.
Attorney for Defendant
Moorman Law Firm, LLC
416 East North Street
2nd Floor
Greenville, South Carolina 29601
864-775-5800
andy@andymoormanlaw.com
Federal ID # 10013

Greenville, South Carolina
April 10, 2020.